UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| YULANDA GIRARDOT, on behalf of S.M.H., <br><br> Plaintiff <br><br> vs. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) CAUSE NO. 1:20-CV-180 RLM <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

OPINION AND ORDER

Yulanda Girardot seeks judicial review of the final decision of the Commissioner of Social Security discontinuing Supplemental Security Income disability benefits for her granddaughter, S.M. H.. After a telephonic oral argument on September 16, the court AFFIRMED the Commissioner's decision and told the parties that a formal written order would follow.

S.M.H. was born prematurely on March 23, 2007and began receiving SSI disability benefits in May 2007. Benefits were continued after a May 2011 review based on a determination that she had a medically-determinable severe mental impairment—intellectual disorder with speech and language delays—that met or equaled Listing 112.05D in 20 C.F.R. Pt 404, Subpt P, Appendix 1.

S.M.H. continued to receive benefits until it was determined on October 16, 2016, that she was no longer disabled. A state agency disability hearing officer upheld that determination on reconsideration following a hearing by and again

after an administrative hearing before an ALJ on November 7, 2018, at which S.M.H. and her grandmother, Yulanda Girardot, appeared and testified.

Ms. Girardot, who is identified as S.M.H.'s guardian, was informed of the right to representation at the hearing, but chose to proceed without the assistance of an attorney or other representative, and signed a written waiver of representation.

The ALJ followed the sequential three-step review standard in determining whether S.M.H.'s disability continued or ended, 20 C.F.R. § 416.994a)(b), and found that:

> (1) There had been medical improvement and "a decrease in medical severity of the impairments present at the time of the CPD [comparison point decision]" (the May 2011 review), citing in support the state agency speech therapist's opinions; the school speech therapist opinion; a June 28, 2016 psychological consultative examination by Robert Kline, III, Psy.D.; and a December 2016 bio-psychosocial assessment for in home counseling.
>
> (2) S.M.H.'s CPD impairments (intellectual disorder combined with severe learning and speech delays) no longer met or medically equaled Listings 12.05D (adults) and 112.05D (children 3-18 years old) as they were written at the time of the CPD, which required a full

2

scale IQ below 70 (S.M.H.'s was 64 when tested in 2011) and significant deficits in adaptive functioning.

(3) Since October 10, 2016:

(a) S.M.H. has had other severe impairments: attention deficit hyperactivity disorder (ADHD) and post-traumatic stress disorder (PTSD);

(b) those impairments resulted in: "marked" limitations in only one area—attending and completing tasks; "less than marked" limitations in acquiring and using information, interacting and relating with others, caring for herself; and "no limitations" in moving about and manipulating objects, and in health and physical well-being; and

(c) S.M.H.'s impairments alone or in combination didn't meet, medically equal, or functionally equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1, specifically Listings 112.06 (anxiety and obsessive-compulsive disorders), 112.11 (neurodevelopmental disorders), and 112.15 (trauma- and stressor-related disorders).[1]

---

[1] An impairment or combination of impairments functionally equals a listing if it results in "marked limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

The ALJ, accordingly, concluded that S.M.H.'s disability ended as of October 10, 2016, and she hadn't become disabled again since then.

The ALJ relied heavily on Exhibit 14F (a June 28, 2016 psychological consultative examination by Robert Kline, III, Psy.D.) and Exhibit 15F (a December 9, 2016 bio-psychosocial assessment by Emily Stefanski and co-signed by Logan Farrelly, LCSW. She gave "great weight" to:

> (1) Dr. Kline's assessment, in which he reports that S.M.H. was in regular classes, no longer had an individualized education plan, wasn't taking psychotropic medication, and had never received inpatient psychiatric treatment and opeined that she "evidenced mostly intact psychological objective findings such as orientation, politeness, cooperativeness, appropriate grooming and hygiene, and normal eye contact, speech, mood, affect, attention, concentration, and memory;
>
> (2) the opinions of two speech pathologists — Jacqueline Brooks and a speech pathologist at Springwood Elementary School— who opined that S.M.H. could function at an age appropriate level and communicate her wants and needs to others, that her connected speech was 100 percent intelligible to the familiar and unfamiliar listener, and that there was no evidence S.M.H. had any speech or language disorders;
>
> (3) the October 10, 2016 opinions of Sharon Wilson, MS, CCC-SLP, a State agency speech consultant, who concurred with the Medical

4

Summary Functional Limitations and Explanation of Findings prepared by Claire Huisentruit, Psy.D. on July 15, 2016 and Edith O. Davis, M.D., on August 1, 2016 that S.M.H. had a "less than marked" limitation on acquiring and using information and interacting and relating to others, and that "MI [medical improvement] has occurred in the area of language"; and

(4) the opinions of the SSA Hearing Officer who made the initial cessation decision following a hearing in April 2018 based on a finding of medical improvement.

The ALJ gave "partial weight" to:

(1) the opinions of the State agency consultants during the cessation determination, finding that they were "somewhat consistent and supported by the record as a whole", specifically Exhs 14F and 15F;

(2) the opinions of S.M.H.'s teachers, Holly Walters and Carol Atha (who opined that S.M.H. had serious problems attending and completing tasks and interacting and relating with others and obvious problems caring for herself), and Ervin Johnson (second grade teacher who opined that S.M.H. was above her grade level in reading and math, had obvious problems in attending and completing tasks and interacting and relating with others, and had slight problems in acquiring and using information and caring for herself, finding that they were "partially", "somewhat" or "not"

5

> consistent with and supported by the medical evidence, specifically Exhs. 14F and 15F; and
>
> (3) the opinions of Sarah Haynes and Yulanda Girardot (S.M.H.'s mother and grandmother) contained in function reports dated April 1, 2011 and April 9, 2011 and an October 17, 2016 questionnaire, finding that they we only "somewhat consistent and supported by the medical records", specifically Exhs. 14F and 15F, and were "unsupported" by other statements they'd made to Social Security in May 2011[Exh. 5E] and to Dr. Kline on June 28, 2016 [Exh. 14F].

The ALJ gave "little weight" to the opinions of Ken Lovko, Ph.D. and the State agency consultants during the determinations for the CPD (who opined in May 2011 that S.M.H. met Listing 112.05D) "because the opinions [were] several years outdated, inconsistent with, and not supported by the record as a whole", specifically Exhs. 14F and 15F.

The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied the request for review. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Ms. Girardot developed only two of the four issues identified in her brief: one having to do with the adequacy of the waiver of her right to counsel for the administrative hearing, and the other the ALJ's failure to develop the record by ordering new IQ testing.

6

With respect to the waiver, Ms. Girardot contends that "the reviewing court must make a searching investigation of the record to ensure that the claimant's rights were protected," specifically the right to representation by counsel, citing Robinson v. Sec. of HHS, 733 F.2d 255, 258 (2d Cir 1984); Gold v. Sec. of Health Education and Welfare, 4563 F.2d 38, 43 (2d Cir. 1972); Alvarez v. Bowen, 704 F.Supp. 49, 53 (S.D.N.Y. 1989), and that the record is incomplete as to whether she understood the rights to representation and whether she possessed the capacity or experience to understand the advisement of rights and to provide competent representation.

We can always think up questions an ALJ might have asked to learn a little more about a person's capacity to decide whether to waive counsel; and it's hard to imagine any situation in which a reviewing court would ever find that a person who chose not to be represented made a wise choice. But the issue isn't whether Ms. Girardot made the right choice or the ALJ could have asked more questions, as plaintiff's counsel opined at the hearing.

"[A] claimant can waive [the right to counsel] once advised of '(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees.'" Jozefyk v. Berryhill, 923 F.3d 492, 496 (7th Cir. 2019) (quoting Skiner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007). Information about the 25 percent limitation on past due benefits

7

was provided in the Request for Hearing Acknowledgment Letter that was sent to Ms. Girardot on July 6, 2018, and the ALJ sufficiently told her about her right to representation at the hearing. This record makes it clear that Ms. Girardot knew she could have an attorney or representative. While she might not have understood everything that right entailed, she decided not to delay the proceedings to let an attorney get involved, agreed to proceed without counsel, and signed a written waiver of representation. Nothing in this record would support a finding that she didn't understand what she was doing or that she or her granddaughter suffered unusual prejudice from that decision.

Ms. Girardot asserts that, even if her waiver of the right to representation was valid, the ALJ breached his duty to develop a full and fair record when she failed to order a new round of IQ testing. Ms. Girardot surmises that if the baseline scores were still accurate, then S.M.H. still would have met listing 112.05D because the IQ scores would have qualified and because S.M.H. had concomitant impairments, including PTSD, ADHD, and nocturnal/diurnal incontinence.

Satisfaction of Listing 112.05D, as contained in the regulations in effect at the time of the CPD, required "[a] valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional

8

and significant limitation of function."[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05D (2011). While S.M.H.'s IQ scores are relevant, they are not dispositive. The ALJ's decision turned on the second prong of the two-part test, so nothing would have been gained by ordering more IQ testing.

In determining whether S.M.H.'s mental impairment still met or equaled Listing 112.05D at Step 2 of the evaluation, the ALJ properly considered only the additional impairments that were considered "at the time of [the] most recent favorable determination or decision" – learning and speech delays. 20 C.F.R. § 416.994a(b)(2). She concluded that those additional impairments were no longer severe, and substantial evidence in the record supports her findings with respect to those impairments. Nothing more was required at step 2. Counsel's assertion during oral argument that ADHD and PTSD "replaced" the speech impairment as the second component is inaccurate and unsupported by the law.

The ALJ considered S.M.H.'s other mental impairments (ADHD and PTSD) at step 3 and determined that they didn't meet, medically equal, or functionally equal a listed impairment, and that S.M.H. hadn't become disabled again since October 10, 2016. Ms. Girardot didn't challenge those findings, contend that the ALJ erred in failing to consider Listing 112.05 in his step 3 analysis, or demonstrate how new IQ testing might have changed the outcome.

---

[2] A physical or other mental impairment imposed "an additional and significant limitation of function" if it qualified as a "severe" impairment. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00; 20 D.F.R. 416.924(c)( (2011).

Ms. Girardot made passing reference to other arguments in her brief and during oral argument, but those arguments were conclusory and undeveloped, and so are waived. *See* Hall v. Berryhill, 906 F.3d 640, 644 (7th Cir. 2018).

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

SO ORDERED.

ENTERED:   September 20, 2021

/s/ Robert L. Miller, Jr.
Judge, United States District Court